UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID SENSABAUGH,

    Plaintiff,

vs.                                                    Case No.  3:08-cv-1209-J-MCR

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**MEMORANDUM OPINION AND ORDER[1]**

This case is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits together with a Title XVI application for supplemental security income on September 30, 2004, alleging an inability to work since April 12, 2004. (Tr. 87-91, 710-712). The Social Security Administration denied this application initially and upon reconsideration. (Tr. 49-50, 56-57). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on March 18, 2008. (Tr. 29-42, 38, 716-843). On May 29, 2008, the ALJ issued a decision finding Plaintiff not disabled.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

1

(Tr. 13-27). On June 30, 2008, Plaintiff filed a Request for Review by the Appeals Council (Tr. 8) and on October 22, 2008, the Appeals Council denied that request. (Tr. 4-6). Plaintiff timely filed a Complaint in the U.S. District Court on December 17, 2008. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since April 12, 2004, due to back pain. (Tr. 87, 730).

### B.    Summary of Evidence Before the ALJ

On the date the ALJ's final decision was issued, Plaintiff was fifty-one years old. He dropped out of high school in the eleventh grade (Tr. 665) and has past relevant work experience in home building and home repair. (Tr. 728). Plaintiff's relevant medical history is discussed at length in the ALJ's decision and as Plaintiff's appeal deals exclusively with issues surrounding his mental limitations, the Court will focus its summary of the medical records on those dealing with Plaintiff's mental condition.

Plaintiff's first mental health examination came at the request of the Social Security Administration ("SSA") and was conducted on February 14, 2005 by Dr. Peter Knox, Psy.D. (Tr. 16, 519-524). Dr. Knox diagnosed Plaintiff with 1) pain disorder with depression; 2) adjustment disorder with depressed mood; 3) rule out alcohol dependence; 4) back, neck, and knee pain; and 5) a moderate degree of impairment indicated by Plaintiff's Global Assessment of Functioning ("GAF") score of 55.[2] (Tr. 522

---

[2] The GAF score is meant to be a procedure for measuring overall severity of psychiatric disturbance. A rating of 51 to 60 indicates some moderate symptoms (e.g., a flat affect and

2

- 523).

On March 3, 2005, M. De Cubas, Ph.D. completed a Psychiatric Review Technique ("PRT") form finding Plaintiff only suffered from mild functional limitations and opining that Plaintiff's mental impairments were not severe. (Tr. 500-13). Dr. Cubas observed that Plaintiff stopped working because of physical ailments, was living alone and able to manage activities of daily living (as long as his physical condition permitted), had adequate social skills and was able to get along with others, and was able to follow a schedule (as long as his physical condition permitted). (Tr. 512).

On May 27, 2005, Plaintiff first presented to Dr. Mohammad Ayubi, M.D. at the VA mental health clinic. (Tr. 258-260, 275-279). Dr. Ayubi assessed Plaintiff's GAF as 45[3] and diagnosed him with major depression due to chronic pain from spinal disc condition. (Tr. 259). Dr. Ayubi's diagnosis was based on his findings that Plaintiff had moderate to minor psychomotor slowing, poor recent memory, impaired attention and concentration, a dysphoric mood, and flat affect with no inflection in voice tone. (Tr. 276). Dr. Ayubi began double antidepressant drug therapy and prescribed other medication to improve Plaintiff's capacity to eat and sleep. (Tr. 260). Dr. Ayubi followed up with Plaintiff on August 19, 2005, noting some slight improvements in mood, appetite, and sleep symptoms. (Tr. 240). Dr. Ayubi continued the drug regimen started in May 2005. (Tr. 241). Improvements were further observed during an exam by Dr.

---

circumstantial speech, occasional panic attacks) OR some difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed. 1994).

[3] A GAF score of 45 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

Ayubi on December 9, 2005 in which Plaintiff stated he felt the September 2005 arthroscopic knee surgery had gone well and that the medications had made a positive difference. (Tr. 594). Dr. Ayubi's diagnosis of Plaintiff, after that appointment, was mood disorder due to chronic pain. (Tr. 240).

On September 28, 2005, Dr. Michael H. Zelenke, Ph.D., completed a PRT form and found Plaintiff did not suffer from a severe mental impairment. (Tr. 148). He determined Plaintiff only had mild limitations and no episodes of decompensation. (Tr. 158). Dr. Zelenke reported that Plaintiff had chronic, mild to moderate symptoms of depression, secondary to chronic pain. (Tr. 160). He observed Plaintiff's activities of daily living were diminished due to pain, but were only minimally affected by depression. Id.

On August 2, 2006, Dr. Ayubi conducted another examination of Plaintiff, noted Plaintiff's mood was neutral to dysthymic while his affect was congruent, and again diagnosed Plaintiff with major depression. (Tr. 607-609). Plaintiff last saw Dr. Ayubi on June 20, 2007, when Plaintiff's mood was noted as remaining reactively dysthymic with a tired/exhausted affect and he was again diagnosed with major depression. (Tr. 632-634)

Dr. Jerry Valente, Ph.D, conducted a psychological evaluation of Plaintiff on November 15, 2007. (Tr. 664-80). Dr. Valente reviewed both Dr. Knox's psychological report and the VA treatment notes and diagnosed Plaintiff with 1) pain disorder associated with both psychological factors and a general medical condition; 2) dysthymic disorder; 3) malingering; 4) chronic back and neck pain; 5) degenerative disc disease; and 6) adjustment issues. (Tr. 674). Dr. Valente assigned Plaintiff a GAF

4

score of 60. (Tr. 674). Dr. Valente conducted numerous tests on Plaintiff and noted Plaintiff's scores were "significantly elevated above the recommended cutoff score[s] for the identification of likely feigning." (Tr. 673). Plaintiff had "endorsed a high frequency of symptoms and impairment that is highly atypical of individuals who have genuine psychiatric or cognitive disorders." Id. As a result, Dr. Valente observed that such "suggest[ed] a high likelihood of potential feigning." Id. In addition, Dr. Valente completed a medical source statement of ability to do work-related activities. Dr. Valente found Plaintiff's ability to understand, remember, and carry out instructions was not affected by his impairments. (Tr. 678). Additionally, Dr. Valente reported Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting was not affected by any impairment. (Tr. 679). Finally, Dr. Valente reported that no other capabilities were affected by Plaintiff's mental impairment. Id.

In progress notes dated March 13, 2008, Dr. Ayubi acknowledged that Plaintiff's medications "ha[d] helped him cope better with his condition," but expressed serious doubts that Plaintiff could "ever be gainfully employed." (Tr. 19, 682). Dr. Ayubi also completed a Mental Residual Functional Capacity Assessment in which he found Plaintiff was moderately limited in the ability to remember locations and work-like procedures and the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 683-84). Dr. Ayubi found Plaintiff was markedly limited in numerous functions, such as the ability to: understand and remember very detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and

5

be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (Tr. 683-84).

The ALJ convened Plaintiff's disability hearing on March 18, 2008. (Tr. 716). Testimony was obtained from Plaintiff; two non-examining physicians, Dr. Bruce Witkind, M.D. and Dr. Carlos Kronberger, M.D.; and a vocational expert ("VE"), Mr. Paul Dolan. (Tr. 717, 743, 794, 824). Additionally, Drs. Witkind and Kronberger completed (or had completed on their behalf) Medical Source Statements of Ability to do Work-Related Activities. (Tr. 697, 701). Dr. Kronberger's Statement as to Plaintiff's mental abilities indicated Plaintiff had no limitations in his ability to: understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; and interact appropriately with the public, supervisors, and co-workers. (Tr. 701-703). Dr. Kronberger found Plaintiff had moderate limitations[4] in his ability to: understand, remember, and carry out complex instructions; make judgments on complex work related decisions; and respond appropriately to usual work situations and changes in routine.

The testimony of both doctors, who had reviewed the medical record, reflected

---

[4] Moderate limitations are defined as hindrances to performance that, nonetheless, allow someone to complete tasks in a satisfactory manner. (Tr. 21).

6

significant concerns with the conclusions reached by the treating physicians. (Tr. 19-21, 799-800). Dr. Kronberger opined that Plaintiff's medical record, demonstrating intact cognitive capacity, normal memory and concentration, lack of anxiety, and absence of psychotic symptoms, was inconsistent with a finding of impairments meeting or equaling any mental listing. (Tr. 21, 802, 808).

The ALJ provided Dr. Ayubi with an opportunity to respond to Dr. Kronberger's opinion and on March 31, 2008, Dr. Ayubi wrote a letter to the ALJ in which he stated that he did not believe he could provide any more information as his "records do speak for themselves." (Tr. 705). Dr. Ayubi reported that he rated Plaintiff's impairment as marked because he believed:

> due to the multitude of symptoms he has exhibited during our treatment visits, [Plaintiff] would be unable to attend to a regular work routine or deal with even minimal pressure associated with holding a job. He would have trouble finding the energy and motivation to overcome his negative responses to pain. This problem is at the heart of depression cause[d] by chronic pain. It is a vicious cycle and, once begun, it is very difficult to break. I have witnessed [Plaintiff's] ability to become easily distracted and get off track and therefore I feel this would happen in the workplace. I have witnessed his low stress tolerance and therefore I feel he would have problems responding to routine changes at work I do not believe he can make independent plans and goals because he is simply focused on pain and he is too depressed to think clearly. I have witnesse[d] his short temper and inability to moderate his own emotions and feel this would occur in the workplace.

Id.

7

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant matter, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through March 31, 2008.  (Tr. 15). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date.  Id.  At step two, the ALJ held Plaintiff had "the

following severe impairments: a history of major depression; mood disorder due to pain; pain disorder; dysthymic disorder; (malingering); history of back surgeries in the 1990's[;] and neck, back[,] and bilateral knee pain . . . ." Id. At step three, the ALJ concluded Plaintiff did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

The ALJ then determined Plaintiff retained the RFC to

> sit, stand[,] and walk for 6 hours in an 8-hour workday; however, he must shift positions every hour (sit/stand option). He can lift/carry 30 pounds occasionally and 20 pounds or less frequently. He can occasionally climb ramps and stairs, balance, kneel, crouch, and stoop. He can never climb ladders, ropes[,] or scaffolds[,] or crawl. He can have occasional exposure to vibration, but must avoid hazards (heights, machinery). [Plaintiff] has no limitations in his ability to understand, remember[,] and carry out simple instructions (unskilled work). He has moderate limitations in his ability to respond appropriately to usual work situations and to changes in a routine work setting.

(Tr. 22). The ALJ explained he did not give controlling weight to the opinion of Plaintiff's treating physician, Dr. Ayubi, because Dr. Ayubi's conclusions were "not well-supported by medically acceptable clinical and laboratory diagnostic techniques." (Tr. 24) (internal quotations omitted). At step four, the ALJ utilized the testimony of a VE during the hearing to determine Plaintiff "was unable to perform any of his past relevant work." (Tr. 26). At step five, again assisted by the testimony of a VE, the ALJ determined that, despite Plaintiff's limitations, he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 27) Therefore, the ALJ determined Plaintiff was not disabled. Id.

9

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff raises two issues on appeal. Plaintiff asserts the ALJ erred in failing to accord controlling weight to the opinion of Plaintiff's treating physician, Dr. Ayubi, without also providing reasons sufficient to establish good cause to discount that opinion. (Doc. 13, pp. 1, 16, 21). Moreover, Plaintiff alleges the ALJ erred in according Dr. Kronberger's opinion weight that, while described by the ALJ as considerable, amounted to controlling. Id. at 18. The Commissioner argues the ALJ's stated reasons in support of the decision to discount Dr. Ayubi's opinion demonstrate the requisite good cause. (Doc. 14, p. 13). The Commissioner further contends that, because Dr. Kronberger's opinion was consistent with the record as a whole, the ALJ properly gave Dr. Kronberger's opinion considerable weight. Id. Upon review of the record evidence, this Court determines the ALJ provided reasons sufficient to support the good cause necessary to discount Dr. Ayubi's opinion and did not err in attributing considerable weight to Dr. Kronberger's opinion.

#### 1. Reasons Sufficient to Discredit Dr. Ayubi

Plaintiff argues the ALJ erred in disregarding the medical opinion evidence of Plaintiff's treating psychiatrist, Dr. Ayubi. As noted above, on March 13, 2008, Dr. Ayubi expressed serious doubts that Plaintiff could "ever be gainfully employed" and found Plaintiff was markedly limited in his ability to perform a multitude of work related functions. (Tr. 682-84). Plaintiff argues that had the ALJ given these opinions the correct weight, a finding of disability would be mandated. (Doc. 13, p.16).

Plaintiff is correct that, in the Eleventh Circuit, a treating physician's opinion on the nature and severity of a claimant's impairments must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Further, if the treating physician's opinion is not entitled to controlling weight, then it must be given substantial or considerable weight unless good cause is shown to the contrary. See Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583; 20 C.F.R. § 404.1527(d); SSR 96-6p. "'Good cause' exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis, 125 F.3d at 1440).

In the instant matter, Dr. Ayubi's opinion, as that of the treating physician, was entitled to controlling weight unless it was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or was inconsistent with the other substantial evidence in the record. The ALJ did not attach controlling weight to Dr. Ayubi's opinions about the nature and severity of Plaintiff's mental limitations because he found Dr. Ayubi's diagnoses were "not well-supported by medically acceptable clinical and laboratory diagnostic techniques" (Tr. 24) and were "not supported by objective medical findings in the record" (Tr. 25). As support therefor, the ALJ relied on Dr. Kronberger's testimony that he had reviewed the entire medical record and found nothing to support Dr. Ayubi's conclusions regarding Plaintiff's limitations. (Tr. 794, 799). Dr. Kronberger also testified there was no objective clinical evidence to support

the significant functional restrictions Dr. Ayubi offered and, as a whole, the record did not corroborate the assessed limitations. (Tr. 801, 809-811). Most notably, Dr. Kronberger testified that Dr. Ayubi's diagnosis of major depression was surprising, given the infrequency of office visits and lack of substantive documentation. (Tr. 809-810, 817).

This Court notes, however, that the ALJ's finding of good cause to discredit Dr. Ayubi's opinion was not based solely on Dr. Kronberger's opinions. To the contrary, Dr. Ayubi himself was offered the opportunity to provide additional information, in light of Dr. Kronberger's testimony. Dr. Ayubi responded, on March 31, 2008, with a letter simply reiterating that his records "speak for themselves." (Tr. 705). Additionally, the ALJ noted in his opinion that based on his review of the medical records from the VA as well as the mental status exams, "there [was] little evidence to support the extreme limitations and restrictions indicated by Dr. Ayubi." (Tr. 25). The ALJ pointed out that both the 2005 and 2007 consultative mental examinations by Drs. Knox and Valente documented only mild to moderate limitations. Id. Further, the ALJ noted that the restrictions imposed by Dr. Ayubi were not consistent with Dr. Ayubi's own clinical examination findings. Id. Specifically, the ALJ referenced the follow-up appointment in December 2005 during which Plaintiff reported that he felt the medication had made a positive difference and he was feeling more mellow and sleeping better. Id. Additionally, the ALJ noted that during a status exam in August 2006, Dr. Ayubi reported Plaintiff was alert, oriented in all spheres, speech and thought processes were at usual baselines, his mood was neutral to dysthymic, and his affect was congruent. Id. Morever, the ALJ relied on the consultative exam of Dr. Valente, which revealed no

mental functional limitations and, in fact, documented normal to mild findings and "an overall symptomatology and impairment that was highly atypical of patients with genuine psychiatric [] cognitive disorders resulting in a high likelihood of feigning or symptom exaggeration." Id. Finally, the ALJ referenced the PRT forms and notes from the DDS psychologists, which he believed also supported the rejection of the mental RFC completed by Dr. Ayubi. (Id., 148-158, 500-513). The Court finds these reasons to be sufficient to satisfy the good cause requirement, thereby permitting the ALJ to discredit the opinion of Dr. Ayubi.

In his brief, Plaintiff provided several reasons why he believed Dr. Ayubi's opinions were entitled to substantial and controlling weight. (Doc 13, pp. 18-19). The Court will briefly address Plaintiff's reasons. First, Plaintiff argued that the value of Dr. Ayubi's opinion was enhanced because Dr. Ayubi was the only doctor to have seen Plaintiff on more than one occasion. Id. at 18. Plaintiff is correct; however, from May 2005 through June 2007, Plaintiff treated with Dr. Ayubi only five times (Tr. 240, 259, 593, 607, 632), lending support to Dr. Kronberger's contention that infrequent appointments were not consistent with a diagnosis of major depression. (Tr. 809-810, 817). Plaintiff also defends Dr. Ayubi's opinion as detailed and articulate and, therefore, not conclusory. (Doc. 13, p. 18). This assertion, even if true, is extraneous to Plaintiff's arguments as the Court finds no instance in the record where the ALJ characterized Dr. Ayubi's statements as conclusory. Finally, Plaintiff states that "portions of the medical opinion offered by Dr. Valente" are consistent with Dr. Ayubi's opinion and that these portions were ignored by the ALJ. Id. at 19. While it is true that culled passages from Dr. Valente's testimony regarding Plaintiff's condition could, in isolation, be interpreted

14

as supportive of Dr. Ayubi's opinion, the ALJ correctly found that Dr. Valente's overall assessment is more accurately viewed as supporting the contrary proposition. Specifically, Dr. Valente opined that Plaintiff "had no mental functional limitations based on his clinical interview and the result of psychometric testing." (Tr. 25, 678-680).

Accordingly, because Dr. Ayubi's opinions were not bolstered by the record evidence, this Court finds the ALJ's decision to discount Dr. Ayubi's opinion was founded on good cause, supported by articulable facts, and not error.

### 2. **Appropriate Weight Accorded Dr. Kronberger**

Plaintiff further alleges that, notwithstanding whatever weight was accorded the opinion of the treating physician, Dr. Ayubi, the ALJ erred in according the opinion of a non-treating physician, Dr. Kronberger, weight that essentially controlled the decision. (Doc. 13, p. 20). To support the allegation, Plaintiff cites an unpublished opinion from this Court quoting a policy interpretation in Social Security Ruling 96-2p: "[a]lthough opinions from other acceptable medical sources may be entitled great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to controlling weight." Green v. Barnhart, Case No.: 3:05-cv-1106-J-MMH (M.D. Fla. February 29, 2007) (unpublished) (internal quotations omitted).

Important facts distinguish Green from the instant case and render Plaintiff's reliance unwarranted. This Court, in Green, reversed the Commissioner's decision after determining that the ALJ: 1) made no provision for the non-examining physician to hear claimant's testimony; 2) did not identify specifically what parts of the treating physician's opinion were inconsistent with the record; and 3) explicitly stated that the non-examining

15

physician's opinion was given controlling weight. Green, Case No.: 3:05-cv-1106-J-MMH at 10, 12, and 14. Here, Dr. Kronberger not only heard Plaintiff testify, but was given the opportunity to posit questions, the ALJ was specific as to how Dr. Ayubi's opinion was not supported by the record, and the ALJ made no representation that Dr. Kronberger's opinion was controlling. (Tr. 24-25, 727, 739-740). While Plaintiff concedes that the record does not reflect any instance where the ALJ states that Dr. Kronberger's opinion is controlling, Plaintiff, nevertheless, contends that because the ALJ's "finding . . . mirrored Dr. Kronberger's opinions," it can be assumed that, despite the fact that the ALJ described the weight given Dr. Kronberger's opinion as "considerable," it is in fact "controlling." (Doc. 13, pp. 20-21). The Court does not agree.

The undersigned does not believe the ALJ relied exclusively on the opinion of Dr. Kronberger. The ALJ considered the record in its entirety, including the PRT forms and notes from the DDS psychologists; the assessments from the consulting doctors, Dr. Knox and Dr. Valente; and Dr. Kronberger's opinions. The ALJ explicitly noted that, unlike Dr. Ayubi's opinions, the opinions of Dr. Kronberger were "supported by objective medical findings" and were "consistent with the evidence of record when considered in its entirety." (Tr. 24). An ALJ may assign great weight to the opinions of non-examining physicians that are contrary to the opinions of a treating physician, provided the ALJ properly discounts the treating physician's opinion and the opinions of the non-examining physicians are well supported and consistent with the record as a whole. Ogranaja v. Commissioner of Social Sec., 186 Fed.Appx. 848, 850-51 (11th Cir. 2006); see also, Chappel v. Commissioner of Social Sec., 2009 WL 2460757, *6 (M.D. Fla.

Aug 10, 2009) and Campbell v. Astrue, 2009 WL 1940205, *8 (S.D. Ga. Jul 6, 2009). As noted above, the ALJ in the instant matter properly discounted Dr. Ayubi's opinions and made a finding that Dr. Kronberger's opinions were supported by the record as a whole. Accordingly, the undersigned finds no error in the ALJ's treatment of Dr. Kronberger's opinion.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __23rd__ day of December, 2009.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record